UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO, WESTERN DIVISION

| | |
|---|---|
| James Robinson, Robert Payne, Gordon Rinfrow, Joseph Hendricks, Johnathan Glover, Karthan E. Norman, Jerome R. Harris, Sheilah Brackett, Terri Gaither, Gregory A. Dicks and Robert Fails, Jr.<br><br>Individually and as Class Representatives,<br><br>Plaintiffs,<br><br>v.<br><br>Ford Motor Company, Inc.,<br><br>International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, (UAW),<br><br>Defendants. | Civil Action No. 1:04 CV 844<br><br>SPIEGEL, J.<br><br>J. BLACK<br><br>CLASS ACTION |

## COMPLAINT

### I. NATURE OF THE ACTION

1. This is a class action, brought by Plaintiffs James Robinson, Robert Payne, Gordon Rinfrow, Joseph Hendricks, Johnathan Glover, Karthan E. Norman, Jerome R. Harris, Sheilah Brackett, Terri Gaither, Gregory A. Dicks and Robert Fails, Jr., (collectively "the Named Plaintiffs"), on behalf of themselves and other similarly

situated individuals against Ford Motor Company, Inc., ("Ford", "the Company" or "Defendant") and the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America ("UAW") (together "Defendants"). Named Plaintiffs seek declaratory, injunctive, and other equitable relief, and compensatory and punitive damages, based on Defendant Ford's continuing deprivation of rights accorded to themselves and members of a class of African-American employees (as defined herein in paragraph 32) under the Civil Rights Act of 1871, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 1981 ("Section 1981"), Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, and the Michigan Elliott-Larsen Civil Rights Act of 1976, MCLA § 37.2101 et seq.

2. This case is brought on behalf of current and former Ford employees nationwide, based on a practice that is used at Ford automotive facilities throughout the country.

3. That practice -- selection for placement on the apprenticeship eligibility list -- involves a testing process, Apprenticeship Training Selection System ("ATSS"), and the selection procedures around this test.

4. Named Plaintiffs are qualified African-American current and former Ford employees who have been subjected to racially discriminatory employment policies and practices. Specifically, the Named Plaintiffs have been denied the equal opportunity to participate in Ford apprenticeship training programs and thereby to obtain promotions to higher paying positions and other significant benefits, because Ford maintains and administers its apprenticeship training program in a way that systematically discriminates against African-American employees.

5. Ford violates major components of comprehensive federal and state regulatory systems for apprenticeship programs, designed to prevent the exact result that has come to pass at the Company. Ford has not made adequate efforts to comply with federal and state civil rights laws mandating equal opportunity.

## II. JURISDICTION

6. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1343(4), which confers original jurisdiction upon this Court in a civil action to recover damages or to secure equitable relief or other relief under any Act of Congress providing for protection of civil rights; pursuant to 28 U.S.C. § 1331, which confers original jurisdiction upon

this Court in a civil action arising under the Constitution or laws of the United States; pursuant to 28 U.S.C. § 1337, which confers original jurisdiction upon this court in a civil action arising under any Act of Congress regulating commerce; and pursuant to 42 U.S.C. § 2000e-(5)(f)(3), which confers jurisdiction upon this Court in a civil action arising under Title VII of 1964. In addition, Plaintiffs invoke this Court's supplemental jurisdiction over the claims raised under MCLA § 37.2101 et seq. pursuant to 28 U.S.C. Section 1367.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and § 1391(c) because Defendant Ford operates its Sharonville facility in the Southern District of Ohio, can be found and conducts business in the Southern District of Ohio, and the cause of action has arisen and occurred in the Southern District of Ohio.

### III. THE PARTIES
#### A. The Named Plaintiffs

8. All Named Plaintiffs are qualified African-American current or former Ford employees who took the apprenticeship test at the Sharonville, Ohio Ford facility on or after January 1, 1997, and were not selected for the Ford apprenticeship program.

9. Plaintiff James Robinson is an African-American adult citizen who resides in Liberty Township, Ohio[1].

10. Plaintiff Karthan E. Norman is an African-American adult citizen who resides in Cincinnati, Ohio.

11. Plaintiff Gregory A. Dicks is an African-American adult citizen who resides in Cincinnati, Ohio.

12. Plaintiff Robert S. Payne is an African-American adult citizen who resides in Fairfield, Ohio.

13. Plaintiff Robert Fails, Jr., is an African-American adult citizen who resides in Mason, Ohio.

14. Plaintiff Jerome Harris is an African-American adult citizen who resides in Cincinnati, Ohio.

15. Plaintiff Johnathan Glover is an African-American adult citizen who resides in Cincinnati, Ohio.

16. Plaintiff Sheilah Brackett is an African-American adult citizen who resides in Maineville, Ohio.

17. Plaintiff Terri Gaither is an African-American adult citizen who resides in Mason, Ohio.

---

[1] Robinson was subsequently placed on a Ford apprenticeship eligibility list and was ultimately selected for an apprentice position.

18. Plaintiff Joseph Hendricks is an African-American adult citizen who resides in Milford, Ohio.

19. Plaintiff Gordon Rinfrow is an African-American adult citizen who resides in Springdale, Ohio.

### B. The Defendants
#### 1. Ford Motor Company, Inc., (Ford)

20. Defendant Ford is a Delaware Corporation and maintains its corporate headquarters in Dearborn, Michigan. Incorporated in 1903, Ford grew to be one of the world's largest automobile manufacturers and most prestigious companies. Today, Ford is organized into two large sectors: automotive and financial services.

21. Ford automobiles and products are developed, manufactured, and sold in a wide variety of industrial and consumer arenas. Ford's vehicle brands include Ford, Lincoln, Mercury, Mazda, Land Rover, Aston Martin, and Jaguar. Ford's automobile service brands include Ford Credit and Genuine Parts and Service.

22. According to its 2003 Annual Report, the Company employs approximately 327,000 employees globally, including approximately 122,000 in Ford's North American Automotive sector.

23. Ford's corporate headquarters ("Ford Corporate" or "the corporate office") oversees and supports the organization's global operations

and disseminates and administers common employment and human resources policies and practices for Ford's domestic operations. Ford Corporate oversees common policies and practices related to career advancement opportunities, training and compensation for Ford employees.

24. Ford utilizes the same or substantially similar selection procedures for apprenticeship programs at all its domestic automobile facilities.

25. Ford engages in interstate and foreign commerce by developing, manufacturing, and selling automobiles and financial service products.

26. Ford is subject to federal and state affirmative action requirements applicable to registered apprentice programs. *See* 29 C.F.R. § 29.5 (2004).

### 2. The International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (UAW)

27. The International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (UAW) is a labor union with approximately 710,000 active members in the United states, Canada, and Puerto Rico.

28. The apprenticeship programs at Ford have been administered as part of a collective bargaining agreement between the Company and the UAW.

29. The UAW is being joined as an indispensable party to this action because it may possess an interest in the apprenticeship programs and the selection process used to select apprentices. Named Plaintiffs believe that the UAW will fairly represent the union's interests in the disposition of the claims presented in this civil action. The UAW's ability to protect its interests may be impaired in the absence of joinder. Named Plaintiffs' ability to bring about complete relief and prospective changes may be adversely impacted without joinder. Such joinder is provided for pursuant to Rule 19(a)(2) of the Federal Rules of Civil Procedure.

## IV. CLASS ACTION ALLEGATIONS

30. The foregoing factual allegations are incorporated herein by reference.

31. The Named Plaintiffs bring this action on their own behalf, and on behalf of a class of similarly situated persons, under Rule 23(a) and 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure.

32. The Named Plaintiffs seek to represent a class of:

> All current and former Ford employees of African descent who took the Apprentice Training

> Selection System (ATSS) test for placement as an apprentice at any Ford facility at anytime from January 1, 1997, onward, and were not placed on a Ford apprenticeship program eligibility.

33. The individuals in the Class are so numerous that joinder of all members is impracticable. There are approximately 3400 members of the Class.

34. There are questions of law and fact common to the Class that predominate over any questions affecting only individuals. Among these common questions are:

    a) Whether Defendant Ford violated federal and state civil rights laws.

    b) Whether Defendant Ford maintains a selection process for entrance into training programs for skilled trades that discriminates against the Class on the basis of race.

    c) Whether Defendant Ford has failed to comply with mandatory federal and state affirmative action requirements applicable to its apprenticeship programs.

    d) Whether Defendant Ford maintains, and has available for inspection, records or other information about the racial

9

composition of the applicants to and participants in its apprenticeship programs.

e) Whether there are disparities between the participation of African-American employees and the participation of similarly situated Caucasian employees in Ford's apprentice programs sufficient to demonstrate that the selection process has an adverse impact on African-American Ford employees.

f) Whether there are disparities between the participation of African-American employees and the participation of similarly situated Caucasian employees in Ford's apprentice programs sufficient to permit an inference of discrimination.

g) Whether the tests administered by Ford have a disparate impact on African-American employees.

h) Whether Ford has failed to monitor its human resources and employment policies and practices adequately to ensure equal employment opportunity.

i) Whether Ford has had knowledge of racial disparities in selection for the apprentice programs and whether any corrective actions were taken as a result of that knowledge.

j) If discrimination is found, whether injunctive relief, including changes to the Company-wide selection process for the apprentice programs and the skilled trades generally, is needed to adequately remedy past and present discrimination against the Class and prevent future discrimination against the Class.

k) Whether Defendant Ford's conduct constitutes a pattern and practice of discrimination against the Class justifying an award of lost wages, benefits or other similar relief to individual members of the Class, including back pay and front pay;

l) Whether Defendant Ford's conduct constitutes a pattern and practice of discrimination against the Class justifying an award of compensatory and punitive damages to individual members of the Class;

35. The claims of the Named Plaintiffs are typical of the claims of the Class. Named Plaintiffs Robinson, Dicks, Payne, Fails, Harris, Norman, Glover, Brackett, Gaither, Hendricks, and Rinfrow allege, *inter alia*, that they suffered race discrimination in Ford's apprentice program selection process.

36. The Named Plaintiffs will fairly and adequately represent the interests of the Class. The Named Plaintiffs have retained skilled and experienced counsel to represent them in class litigation.

37. Ford has acted or refused to act on grounds generally applicable to the Class, as described in paragraphs 1 through 34 above and 40 through 56 below, making final injunctive or declaratory relief appropriate.

38. A class action is superior to other available methods for the fair and efficient adjudication of the controversy.

39. Issues common to the Class, as noted in paragraph 34 above, predominate over individual issues.

## V. ALLEGATIONS OF CLASSWIDE DISCRIMINATION

40. The foregoing factual allegations are incorporated herein by reference.

41. Defendant Ford has engaged in a continuing pattern and practice of racial discrimination that has unfairly excluded African-American employees from entering its apprentice programs. The current selection process has been in existence since before January 1, 1997.

42. These discriminatory practices and policies exist, despite federal and state regulations that specifically mandate a comprehensive affirmative action program for apprentice programs like those at Ford.

43. Federal law requires Ford's management to maintain records of the impact that its tests and other selection procedures have upon entrance to apprentice programs for African-Americans. If testing or selection procedures have an adverse impact on African-Americans, Ford is required to investigate suitable alternative selection procedures that will have a less adverse impact. Ford's discriminatory system for selecting apprentices violates federal and state civil rights law governing employment selection mechanisms because it fails to use selection procedures with the as little adverse impact as possible.

### A. Skilled Trade Segregation: African-Americans Are Denied Equal Access to Ford's Apprentice Programs

44. Ford's selection process for entry into the apprentice programs, denies African-Americans the right to fair treatment and equal employment opportunity. As a result, African-Americans have been largely shut out of Ford's apprentice programs and the skilled trades themselves.

45. A primary obstacle is the substance and scoring of Ford's tests that employees must pass to enter its apprentice programs. Under these procedures, Ford disproportionately selects Caucasian applicants over African-American applicants. This disparate impact on Ford's African-American employees is evidenced by the dramatically lower

African-American selection rates for apprentices throughout Ford's nation-wide facilities.

46. Since at least 1997, Ford's apprentice selection mechanism has selected disproportionately low numbers of African-Americans for its apprentice slots.

### B. Ford's Selection Procedures Violate EEOC Uniform Guidelines

47. The discriminatory procedures by which Ford employees are selected for the apprentice program, including but not limited to the administration of the tests, discriminate against African-American employees to the benefit of similarly situated Caucasian employees.

48. Ford has failed to comply with the EEOC requirements relating to adverse impact. The EEOC applies Uniform Guidelines on Employee Selection Procedures ("Guidelines") in its enforcement of Title VII of the Civil Rights Act. Under the Guidelines, a selection procedure used as a basis for employment decisions which has an adverse impact on the employment opportunities of members of any race is considered discriminatory unless the selection procedure has as little discriminatory impact as possible, compared with other alternatives, and is shown to be substantially valid for a legitimate purpose. If the total selection process for a job has an adverse impact, the Guidelines

14

state that individual components of that process should be evaluated for adverse impact.

49. The EEOC Uniform Guidelines on Employee Selection Procedures state, "[a] selection rate for any race, sex, or ethnic group which is less than four-fifths (4/5) (or eighty percent) of the rate for the group with the highest rate will generally be regarded by the Federal enforcement agencies as evidence of adverse impact..." (29 C.F.R. § 1607.4 (D)).

50. In addition to violating Title VII, Section 1983 and state civil rights law, with respect to both disparate impact and disparate treatment, Ford has also violated the EEOC regulations on disparate treatment. The Uniform Guidelines on Employee Selection Procedures provides that:

> ...A selection procedure--even though validated against job performance in accordance with these guidelines--cannot be imposed upon members of race, sex, or ethnic group where other employees, applicants or members have not been subjected to that standard. Disparate treatment occurs where members of a race, sex or ethnic group have been denied the same employment, promotion, membership or other employment opportunities as have been available to other employees or applicants. (29 C.F.R. § 1607.11)

15

## COUNT ONE: DISPARATE IMPACT DISCRIMINATION AGAINST NAMED PLAINTIFFS AND THE CLASS IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000e, 42 U.S.C. § 1981 AND OHIO R.C. § 4112

51. The foregoing factual allegations are incorporated herein by reference.

52. Ford's use of the apprenticeship selection process, including the use of the ATSS test, has an adverse impact against African-Americans, in violation of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, 42 U.S.C. § 1981 and MCLA § 37.2101 et seq.

## COUNT TWO: INTENTIONAL DISCRIMINATION AGAINST THE NAMED PLAINTIFFS AND THE CLASS IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000e, 42 U.S.C. § 1981 AND MCLA § 37.2101 et seq.

53. The foregoing factual allegations are incorporated herein by reference.

54. Ford has intentionally discriminated against the Named Plaintiffs and the Class by a continuing pattern and practice of racial discrimination in selections into its Ford apprentice programs, in violation of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, 42 U.S.C. § 1981 and MCLA § 37.2101 et seq.

## COUNT THREE – FOR INJUNCTIVE RELIEF AGAINST THE UAW

55. The foregoing factual allegations are incorporated herein by reference.

56. Pursuant to Rule 19(a)(22) of the Federal Rules of Civil Procedure, the UAW is joined as a potentially necessary party for purposes of

16

affording complete relief, and in particular, for appropriate complete and prospective relief to the Named Plaintiffs.

## PRAYER FOR RELIEF

WHEREFORE, the Named Plaintiffs respectfully request that this Court grant the following relief:

57. Certify this case as a class action;

58. Enter a judgment that Defendant's acts and practices as set forth herein are in violation of the laws of the United States and the laws of the State of Michigan;

59. Enter preliminary and permanent relief enjoining the discriminatory conduct necessary to end Defendant's discriminatory practices and to prevent current and future harm to the Named Plaintiffs and the Class;

60. Award the Named Plaintiffs and the Class fair and equitable monetary relief;

61. Award the Named Plaintiffs and the Class entrance into the apprenticeship programs;

62. Award Named Plaintiffs and the Class damages;

63. Award Named Plaintiffs the costs of this action, including the fees and costs of experts, together with an incentive bonus and reasonable attorneys' fees; and

64. Grant Named Plaintiffs and the Class such other and further relief, as this Court finds necessary and proper; OR

65. In the alternative, Grant Approval of the Parties' Settlement Agreement, which addresses much of the relief sought by Plaintiffs.

Respectfully submitted,

*/s/ Nathaniel R. Jones*

Nathaniel R. Jones
Blank, Rome LLP
201 East Fifth Street, Suite 1700
Cincinnati, OH 45202
jones-n@blankrome.com
(513) 362-8772
(513) 362-8773 telefax

Cyrus Mehri, Esq.
Lisa Bornstein, Esq.
Mehri & Skalet, PLLC
1300 19th Street, NW, Suite 400
Washington, DC 20036
cmehri@findjustice.com
lbornstein@findjustice.com
(202) 822-5100
(202) 822-4997 telefax

Armand Derfner, Esq.
Derfner, Altman and Wilborn
40 Calhoun Street, Suite 410
Charleston, SC 29402

Suzette Peyton, Esq.
The Law offices of Tom Nebel, P.C.
2525 West End Avenue, Suite 1490
Nashville, TN  37203

Rhonda Maxwell, Esq.
The Law Office of Rhonda M. Maxwell
4204 River Laurel Trace
Suwanee, GA  30024

*Attorneys for Named Plaintiffs and the Putative Class*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that true and correct copies of the foregoing Complaint have been duly served on opposing counsel by overnight mail to:

Timothy Devine
Office of the General Counsel
Ford Motor Company
Parklane Towers West, Suite 1500
Three Parklane Boulevard
Dearborn, MI 48126
tdevine@ford.com

Connye Y. Harper
Office of General Counsel of the UAW
UAW International Detroit
8000 East Jefferson Ave.
Detroit, MI 28214
charper@uaw.net
(313) 926-5216
(313) 822-4844 telefax

This is the 27th day of December 2004.

_____